### Dows v. Town of Elmwood.

*(Circuit Court, N. D. Illinois.* February 29, 1888.)

1. CONSTITUTIONAL LAW—TITLES OF LAWS—RAILROAD COMPANIES—MUNICIPAL AID.

Act Ill. April 17, 1869, (3 Priv. Laws 26th Gen. Assem. 373,) had for its object the legalization of an election held in the town of Elmwood, in Peoria county, on March 16, 1869, at which it was voted to subscribe for and take $40,000 of the capital stock of a certain railroad over and above the $35,000 which was on the same day subscribed for and taken in accordance with the provisions of the charter of the said company. These facts all appeared in the body of the statute, but the title was simply "An act to legalize a certain

election therein named." *Held,* in the absence of any decision by the courts of Illinois to the contrary effect, that the act was not in contravention of the constitutional provision of 1848, that every local or private law shall embrace but one subject, and that subject shall be expressed in the title.

2. RAILROAD COMPANIES—MUNICIPAL AID—DURATION OF BONDS.

Act Ill. March 9, 1869, (3 Priv. Laws, 26th Gen. Assem. 283,) amending the charter of the Dixon, Peoria & Hannibal Railroad Company, (2 Priv. Laws 25th Gen. Assem. 604,) authorized the counties, towns, etc., on the line of its proposed extension, to subscribe for stock in the bonds of such county, town, etc., said bonds to be payable at any time specified, "not exceeding 20 years from date," with interest, etc. The bonds issued under this act by the town of Elmwood, in Peoria county, bore date April 27, 1869, and were delivered on that day; but it was set out on their face that they ran 20 years from July 1, 1869, and drew interest from that date. *Held,* that the bonds were not void as in excess of the authority conferred by the act of March 9, 1869; the interval between April 27, 1869, and July 1, 1869, being only a reasonable time for issuing and delivering the bonds, and putting them on the market.

3. SAME—UNAUTHORIZED ISSUE—POWER OF LEGISLATURE TO RATIFY.

An issue of municipal bonds in aid of a railroad, not originally authorized, but which the legislature of the state might have authorized, and did in fact subsequently ratify, will be held valid in the federal courts, upon the well-settled doctrine of the United States supreme court as to the power of a state legislature, in the absence of any constitutional provision to the contrary, to ratify acts of a municipal corporation which it might originally have authorized, notwithstanding decisions of the state supreme court adverse to such doctrine, rendered after the issue of the bonds and the passage of the curative act. Following *Bolles* v. *Town of Brimfield,* 120 U. S. 759, 7 Sup. Ct. Rep. 736.

At Law. Action upon coupons of certain bonds issued by the town of Elmwood, Peoria county, in aid of the Dixon, Peoria & Hannibal Railroad Company.

*Thomas S. McClelland* and *G. A. Sanders,* for plaintiff.

*Lyman Trumbull* and *H. B. Hopkins,* for defendant.

BUNN, J., (*orally.*) The two objections in this case which seem to have most substance are—*First,* that the bonds of the town of Elmwood, issued to the railroad company in the month of April, 1869, are void for the reason that there was a failure to comply with the Illinois constitutional provision of 1848, that every local or private law shall embrace but one subject, and that subject shall be expressed in the title; and, *second,* that the bonds issued by the town exceeded the authority contained in the law of Illinois under which they were issued, in that they run over 20 years, which is the limit provided by the law. The court will consider these objections in their order. There are other objections made and discussed; but I desire only to notice these two objections to the validity of the bonds. The bonds are legal in form, and recite that they are issued in pursuance of certain statutes of the state of Illinois, under and by virtue of which the town bonds were voted by the legal electors of the town of Elmwood; and there are no questions of fact in the case to be submitted to the jury; and it becomes the duty of the court to decide the questions of law, and direct a verdict in the case, either for the plaintiff or defendant.

*First,* in regard to the objection, which has been strenuously urged and ably argued in behalf of the defendant, that the law of April 17,

1869, which legalized the town meeting held in the town of Elmwood in the month of March preceding, was not legally or constitutionally passed by the legislature of Illinois, because the provision before referred to of the constitution of Illinois was not complied with. The title of the act is, "An act to legalize a certain election therein named," and it is insisted on the part of the defendant that this is too general and indefinite to be a substantial compliance with the constitution. Many cases have been cited upon this subject which seem to be not wholly in point; but I am of opinion that the case of *Montclair* v. *Ramsdell*, 107 U. S. 147, 2 Sup. Ct. Rep. 391, should rule the case at bar, there being no decision of the supreme court of Illinois holding the act, or any similar act, invalid for such a reason. In that case Justice HARLAN, delivering the opinion of the court, quotes with approval the language of the supreme court of New Jersey in *State* v. *Town of Union*, 33 N. J. Law, 350, as follows:

"The purpose of this constitutional provision was to prevent surprise upon legislators by the passage of bills the object of which is not indicated by their titles, and also to prevent the combination of two or more distinct and unconnected matters in the same bill."

Further said the court:

"It is not intended to prohibit the uniting in one bill of any number of provisions having one general object fairly indicated by its title. The unity of the object must be sought in the end which the legislative act proposes to accomplish. The degree of particularity which must be used in the title of an act rests in legislative discretion, and is not defined by the constitution."

I think the principle enunciated in that case, which is cited with approval by the supreme court of the United States, is applicable to the case at bar. The title to the act is, "An act to legalize a certain election named therein." There is but one subject embraced in the act, and that subject is expressed in the title. It is true, it is not given with so great particularity as was possible. But it is not misleading; the description of the subject of the act as stated in the title is apt and accurate; and the only possible objection is that it is too general, in that it does not locate the election by designating the time and place, and the question is whether this court, in advance of any decision on the subject by the Illinois courts, ought to say that the act is unconstitutional and void. Now, this court will not undertake to decide that the act of the legislature of a state is unconstitutional and void, unless it is clearly and palpably so. So long as the title of the act states the purpose or subject which is embodied in the act itself, although in very general terms, I think it is a substantial compliance with the provisions of the constitution. Mr. Justice HARLAN, in *Montclair* v. *Ramsdell*, *supra*, in commenting upon this and other cases, says:

"Upon the authority of these decisions, and upon the soundest principles of constitutional construction, we are of opinion that the objection taken to the act of April 15, 1868, as being (when construed as we have indicated) in conflict with the constitution of New Jersey, cannot be sustained. The powers which the township of Montclair is authorized to exert, however varied or extended, constitute, within the meaning of the constitution, one object, which

is fairly expressed in a title showing the legislative purpose to establish a new or independent township. It is not intended by the constitution of New Jersey that the title to an act should embody a detailed statement, nor be an index or abstract of its contents. The one general object—the creation of an independent municipality—being expressed in the title, the act in question properly embraced all the means or instrumentalities to be employed in accomplishing that object. As the state constitution has not indicated the degree of particularity necessary to express in its title the one object of an act, the courts should not embarrass legislation by technical interpretations based upon mere form or phraseology. The objection should be grave, and the conflict between the statute and the constitution palpable, before the judiciary should disregard a legislative enactment upon the sole ground that it embraced more than one object, or, if but one object, that it was not sufficiently expressed by the title."

I think the case at bar comes within the reasoning and spirit of this case.

Upon the other point, that the bonds are not in compliance with the law in this, that they run longer than 20 years, which was the limit fixed by the act of March, 1869, I am of opinion upon that question also that the objection made by the defendant should be overruled. I think the bonds are in substantial compliance with the law, and that this case should be ruled by *Township of Rock Creek* v. *Strong*, 96 U. S. 271. The facts in that case were about the same as in this, the only difference being that the supreme court in the former say it does not appear from the record whether the bonds were issued and delivered on the day of their date or not. In the case at bar it appears from the declaration of the plaintiff that the bonds were dated April 27, 1869, and that they were issued and delivered on that day. It also appears in the evidence that they ran 20 years from July 1st following, and drew interest from that date, so that there was a lapse of about two months between the time of the issue and delivery of the bonds, and the time when they went into effect so as to draw interest. It is natural enough that a town and railroad company, in a transaction of that kind, should have a little time to get the bonds issued and delivered and put on the market, and the transaction perfected for which the vote of the town-meeting was taken, before the bonds should begin to draw interest in the hands of the holder; and it would not seem that two months was an unreasonable time for that purpose. It is true, they might have been dated ahead. Suppose they had been dated on the 1st of July, instead of the 27th of April, the case would not be different, in my judgment, from what it is now. They did not draw interest until that time, and only ran 20 years from the time they commenced to draw interest. I do not think the issuing and delivering of the bonds two months previous to the time the 20 years began to run, when they began to draw interest, is a material fact in the case.

In the case referred to in 96 U. S., the bonds were issued and dated September 10, 1872, and made payable 30 years from October 15, 1872, with interest from that time. They were not registered in the office of the auditor of state until October 17, 1872. So in that case

there was one month and five days between the date of the issue of the bonds and the time when the 30 years commenced to run, when they began to draw interest. In this case the interval was a little longer, but the cases, it seems to me, rest upon the same general principles. It is true, the court says it did not appear when they were issued and delivered. In this case they were issued on the day of their date; and in the case referred to, in the absence of evidence of the time of delivery, the presumption would have been that they were issued and delivered on the day of their date. If that be so, the cases are mainly the same. But however that may be, I do not think two months and three days between the date of the bonds and the time they commenced to draw interest in the hands of the persons purchasing them, is a material fact in the case. How it would have been if the bonds had been drawn so as to run and draw interest for any number of years more than the time specified in the act, the court is not called upon to determine.

As to the general question of the validity of these bonds, I think the case is ruled by *Bolles* v. *Brimfield*, 120 U. S. 759, 7 Sup. Ct. Rep. 736. That is the latest expression of the supreme court upon the question of the validity of a law of Illinois identical with this; and my judgment is it should be decisive of the validity of these bonds, and I have no doubt of the correctness of the principle which the supreme court has adopted in that and other cases. It seems to me very clear, on principle as well as upon the authorities, that wherever the legislature has power to authorize the different municipalities of the state to vote and issue bonds under authority of an act of the legislature, if the people vote those bonds voluntarily, and the action of the electors is afterwards confirmed and approved by the legislature, and their acts made binding upon the town by an express act ratifying their action, it stands precisely on the same footing as though there had been an enabling act in advance. I do not see why the vote of the town at a regular meeting, and subsequent ratification of the legislature, does not cover the whole question of power just as fully to all intents and purposes, and in the same manner substantially, as though the act had been authorized by the legislature in the first instance. That is what the supreme court decides in this case in 120 U. S. It is true, in some other cases the supreme court follow the decisions of the state courts upon those questions, where those courts have held a law unconstitutional before rights have become vested; but as far as anything appears to the court now, that case is decisive of the one at bar, and I think it is the duty of the court to direct the jury to find a verdict for the plaintiff for the amount of the coupons of which he was the owner at the time of the commencement of this suit.